**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

YU WEN PAN,                          )
                                     )          Case No. 3:25-cv-00265
                    *Petitioner*,    )
                                     )          District Judge Stephanie L. Haines
            v.                       )          Magistrate Judge Kezia O. L. Taylor
                                     )
LEONARD ODDO,                        )
                                     )
                    *Respondent*.    )

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Petition for Writ of
Habeas Corpus, ECF No. 1, be granted in part and denied in part.  It is recommended that the
Petition be granted to the extent Petitioner is requesting release from custody, subject to and in
accordance with the conditions of his preexisting order of supervision.  It is recommended that
the Petition be denied without prejudice to the extent Petitioner is seeking an injunction
preventing his re-detention in the future.  Based on the recommendation that the Petition should
be granted to the extent Petitioner is requesting release from custody, it is recommended that
Petitioner's Motion for Discovery, ECF No. 12, and Motion to Compel Discovery, ECF No. 19,
be denied as moot.

### II.    REPORT

#### A.  Background

Pending before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by
Petitioner Yu Wen Pan ("Petitioner") pursuant to 28 U.S.C. § 2241.  ECF No. 1.  Petitioner is a
native and citizen of the People's Republic of China.  ECF No. 17-1 at 1.  He entered the United
States in November 1986 and became a lawful permanent resident.  *Id.* at 1.  In May 1996, he

was arrested and charged with several felony offenses in New York state, and he was convicted and sentenced to three to six years of incarceration on July 31, 1996. *Id.*

On September 16, 1997, a Notice to Appear was issued charging Petitioner's removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") as an alien convicted of an aggravated felony. *Id.* He was ordered removed from the United States by an Immigration Judge on January 9, 1998. *Id.* The Board of Immigration Appeals ("BIA") affirmed his order of removal on September 2, 1998. *Id.* at 3. Presumably, Petitioner was unable to be removed and he was later released pursuant to an order of supervision.[1]

The Department of Homeland Security's United States Immigration and Customs Enforcement ("ICE") issued a Warrant of Removal/Deportation for Petitioner on May 13, 2025, and Petitioner was taken into custody that same day when he reported in accordance with the reporting requirements of his order of supervision. *Id.* at 2; *see also* ECF No. 17-2. That same day, ICE also served Petitioner with a Notice of Revocation Release informing Petitioner that his order of supervision had been revoked. ECF No. 17-3 at 1. It stated that the decision to revoke his order of supervision had been made "based on a review of [his] official alien file and a determination that there [were] changed circumstances in [his] case, specifically that ICE [was] acquiring a travel document on [his] behalf and [his] removal [was] now imminent." *Id.* The record indicates that an initial information interview was conducted later that same day during which Petitioner was afforded the opportunity to respond to the reasons for revocation of his

---

[1] Respondents submitted no information explaining why Petitioner was not removed from the United States. According to Petitioner, ICE has been trying to remove him "for over 30 years with no success." ECF No. 1 at 6. He states that he was detained for 29 months in 2000 and for 90 days in 2015. ECF No. 2 at 1. ICE was not able to remove him on either occasion, so he was released on supervision. *Id.*

supervision stated in the notification letter.  *Id*. at 2.  However, he elected to not make any statement at that time.  *Id*.

Petitioner has been in ICE custody since May 13, 2025.  He is currently detained at the Moshannon Valley Processing Center in Phillipsburg, Pennsylvania.  As of the time of this writing, Petitioner has been detained for over six months while awaiting removal.

In his Petition before the Court, Petitioner argues that ICE should not have revoked his supervised release and re-detained him because he did not violate any conditions of his supervision and his circumstances have not changed.  ECF No. 1 at 6.  He implies that even with the recent Administration's changes in immigration policy, China will still not accept him due to his criminal record and because he is not in possession of a Chinese birth certificate, which China requires before issuing a travel document.  ECF No. 12 at 2; No. 20 at 6-7.  He avers that he will likely be detained indefinitely, or in other words, there is no significant likelihood of his removal in the reasonably foreseeable future.  ECF No. 1 at 6.  He requests that the Court order his immediate release under his previous order of supervision without retention unless his removal to China is to occur in the reasonably foreseeable future.  *Id*.  The Government filed a response in opposition to the Petition, ECF No. 17, and Petitioner filed a traverse, ECF No. 20.

**B.  Jurisdiction**

Jurisdiction exists under 28 U.S.C. § 2254 "for statutory and constitutional challenges to post-removal-period-detention."  *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Roe v. Oddo*, No. 3:25-cv-128, 2025 WL 1892445, at *4 (W.D. Pa. July 9, 2025) (holding that 8 U.S.C. § 1252(g) did not strip the court of jurisdiction since it was "examining the contest of Petitioner's detention" and not "reviewing Petitioner's removal order.").

The Supreme Court of the United States has explained that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas relief applies to petitioners seeking relief from executive detention but not to petitioners seeking to remain in the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 116-120 (2020). The Court has jurisdiction in this case because Petitioner is contesting his detention and the violation of his due process rights, not the execution of his order of removal.

**C. <u>Discussion</u>**

1. <u>**Under 8 C.F.R. § 241.13(i)(2), Petitioner's detention is authorized only if the Government can show that based on changed circumstances removal has become significantly likely in the reasonably foreseeable future.**</u>

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any final order of removal. 8 U.S.C. § 1231(a). That said, once the time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute[,]" and the noncitizen must be released. *Zadvydas*, 533 U.S. at 699. "Indefinite, perhaps permanent, detention" is not authorized. *Id*.

Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6). Once ICE releases a noncitizen on an order of supervision ("OSUP"), its ability to re-detain a noncitizen is governed by 8 C.F.R. § 241.13. Relevant here, is the regulation instructing that ICE may re-detain a noncitizen released on OSUP "if, on account of changed circumstances, [ICE] determines that there is a significant

4

likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). "ICE's decision to re-detain a noncitizen like [Petitioner] who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)). The regulation clearly indicates, upon revocation of supervised release, it is the Government's burden to show a significant likelihood that the noncitizen may be removed. *See Roble v. Bondi*, No. 25-cv-3196, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (finding regulations place burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future); *Escalante v. Noem*, No. 9:25-cv-00182, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) (finding it is the government's burden of proof, upon revocation of supervised release, to show a significant likelihood that the noncitizen may be removed); *Nguyen v. Hyde*, No. 25-cv-114070, 2025 WL 1725791 (D. Mass. June 20, 2025) (finding *Zadvydas* 6-month presumption not applicable where noncitizen is "redetained" after being on supervised release and that respondents failed to meet their burden to show a substantial likelihood of removal is now reasonably foreseeable); *Tadros v. Noem*, No. 25-cv-4108, 2025 WL 1678501 (D.N.J. June 13, 2025) (finding 6-month presumption had long lapsed while petitioner was on supervised release and it is now respondents burden to show removal is now likely in the reasonably foreseeable future.).

It is not disputed that Petitioner was issued an administrative final order of removal in September 1998, and the Government does not allege that Petitioner has violated his OSUP

conditions of release or that he is now a flight risk. Instead, it asserts that due to "changed circumstances . . . ICE is acquiring a travel document" on Petitioner's behalf and his "removal is now imminent." ECF No. 17-3 at 1. The Government, however, does not indicate what the "changed circumstances" relate to.

Despite the Government's invocation of *Zadvydas*, and their assertion that the Petition is premature because Petitioner had not been detained for over six-months at the time of their response to the Petition, this case does not present the typical first round detainment of a noncitizen awaiting removal where *Zadvydas* is applicable. As noted above, Petitioner has been previously detained in ICE custody on at least two prior occasions and then released on supervised release. It is apparent that the Government's position is that ICE believes the change in immigration policy on the removal of criminal aliens would produce a significant likelihood of removal in the reasonably foreseeable future. However, the Government has provided no updated information to support that due to "changed circumstances" there is a significant likelihood Petitioner will be removed in the foreseeable future. The Government has not reported when it made requests for a travel document on behalf of Petitioner, much less that any significant steps have been taken to carry out Petitioner's removal.

Petitioner asserts that ICE has been unable to effectuate his removal since 1998 and there has been no change in circumstances such that ICE is now able to secure a travel document for his removal to China (or elsewhere) in the reasonably foreseeable future as required by § 241.13(i)(2). Petitioner submits that China is traditionally a recalcitrant country and it will not issue a travel document without a birth certificate, which he does not have and has never had.

On the record before the Court, the undersigned finds that the Government has not made the showing under 8 C.F.R. § 241.13(i)(2) that circumstances have changed such that there is a significant likelihood of Petitioner's removal to China (or elsewhere) in the reasonably foreseeable future. For this reason, it is recommended that the Petition be granted.

   **2.    Under *Zadvydas*, the initial burden rests with Petitioner to provide a good reason to believe removal is unlikely in the reasonably foreseeable future; only then does the burden shift to the Government to rebut that showing.**

Alternatively, the undersigned finds that under *Zadvydas*, Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the Government has not "respond[ed] with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

In *Zadvydas*, the Supreme Court interpreted § 1231(a)(6) to limit postremoval detention to a period "reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. The Court found that postremoval detention for six months is "presumptively reasonable," but beyond those six months, if removal is no longer reasonably foreseeable, continued detention becomes unauthorized. *Id.* at 699.

That said, the expiration of six months does not entitle every noncitizen to be released. Rather, the government may continue detention until no significant likelihood of removal in the reasonably foreseeable future exists. *Id.* at 701. Accordingly, under *Zadvydas* the noncitizen has the initial burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. Once the noncitizen provides such "good reason," the burden shifts to the government to rebut the noncitizen's allegations. *Id.* No clear guidance exists to aid courts in making the determination as to whether a significant

likelihood of removal in the reasonably foreseeable future exists. Ultimately, determining what the "reasonably foreseeable future" is requires a factual determination to be undertaken by the habeas court looking into the circumstances and detention length of each individual petitioner. But, the reasonableness of the detention shrinks as the time of post-removal confinement grows. *Zadvydas*, 533 U.S. at 701.

At the time he filed his Petition in this case, Petitioner had been in ICE custody for approximately three months. The Government, in its response, argued that Petitioner's claim was premature under *Zadvydas* as his detention was within the presumptively reasonable six-month time period. At the time of this writing, however, Petitioner has now been detained for over six months, outside the "presumptively" reasonable time period, and, as a result, *Zadvydas* arguable applies.[2]

Under *Zadvydas*, once a petitioner has articulated a "good reason to believe" that removal is unlikely in the reasonably foreseeable future, the burden shifts to the government to rebut that showing. Petitioner has offered such articulation. He has stated that he does not have a Chinese birth certificate, which he avers is a prerequisite to China issuing a travel document, and he has submitted documentation suggesting that China is still uncooperative in accepting repatriation of

---

[2] In a re-detention case, the question arises when did the presumptively reasonable six-month detention period pursuant to *Zadvydas* begin. *See Medina v. Noem*, No. 25-cv-1768, 2025 WL 2306274 (D. Md. Aug. 11, 2025); *Tadros v. Noem*, No. 25-cv-4108, 2025 WL 1678501 (D.N.J. June 13, 2025). In *Tadros*, the government contended the presumptively reasonable period of detention began when the noncitizen was re-detained. *Id.* at *3. The petitioner argued the final order of removal triggered the six-month detention period under *Zadvydas*. *Id.* The district court, finding the petitioner's position more persuasive, determined the 90-day removal period was triggered by the final order of removal and, as a result, the six-month detention period under *Zadvydas* had lapsed long ago. *Id.* That issue need not be addressed as Petitioner's current detention has now exceeded the presumptively reasonable six-month detention period under *Zadvydas*.

its citizens despite the recent change in immigration policy. The undersigned concludes that this is enough to find that Petitioner has met his burden.

The question then becomes whether the Government has come forward with sufficient evidence to "rebut that showing." *Zadvydas*, 533 U.S. at 701. "A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Escalante*, 2025 WL 2206113, at *4 (quoting *Kane v. Mukasey*, No. CV B-08-037, 2008 WL 11393137, at *5 (S.D. Tex. Aug. 21, 2008), *superseded by*, 2008 WL 11393094 (S.D. Tex. Sept. 12, 2008) (a new report and recommendation was entered denying the petition as moot because petitioner was deported prior to the order adopting the R&R), adopted by 2008 WL 11393148 (S.D. Tex. Oct. 7, 2008)). As it currently stands, the record before the Court is sparse but it leaves substantial uncertainty regarding whether there is a "significant likelihood" that Petitioner will be removed to China (or elsewhere) in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Here, at least on the current record, the undersigned finds that Petitioner has articulated a "good reason to believe" that his removal is unlikely in the reasonably foreseeable future, just as it has been in the last several decades, and the Government has not rebutted that showing here.

## III.    CONCLUSION

For the aforementioned reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus, ECF No. 1, be granted in part and denied in part. It is recommended that the Petition be granted to the extent Petitioner is requesting release from custody, subject to and in accordance with the conditions of his preexisting order of supervision. It is recommended that the Petition be denied without prejudice to the extent Petitioner is seeking an injunction

preventing his re-detention in the future.  Based on the recommendation that the Petition should be granted to the extent Petitioner is requesting release from custody, it is recommended that Petitioner's Motion for Discovery, ECF No. 12, and Motion to Compel Discovery, ECF No. 19, be denied as moot.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated:  December 1, 2025.


/s/ Kezia O. L. Taylor
Kezia O. L. Taylor
United States Magistrate Judge


Cc:    Yu Wen Pan
       A#040-264-610
       Moshannon Valley Processing Center
       555 Geo Drive
       Philipsburg, PA  16866

       Counsel for Respondents
       (Via CM/ECF electronic mail)